**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MICHAEL J. MALOUF, | : | |
| Plaintiff, | : | Civil No. 12-2555 (JBS) |
| v. | : | |
| DR. NICOLETTA TURNER-FOSTER, et al., | : | **OPINION** |
| Defendants. | : | |

**APPEARANCES:**

> MICHAEL J. MALOUF, Plaintiff pro se
> Reg. No. # 24857-038
> FMC Devens
> Ayers, Massachusetts 01432

**SIMANDLE,** Chief Judge

Plaintiff, Michael J. Malouf, a federal inmate confined at the FMC Devens in Ayers, Massachusetts, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint may proceed in part.

## I.   BACKGROUND

Plaintiff, Michael J. Malouf ("Plaintiff"), brings this civil action against the following Defendants: the United States of America; the Federal Bureau of Prisons ("BOP"); Warden Jeff Grondolsky, Warden;[1] Steven Spaulding, Heath Services Administrator;[2] Dr. Nicoletta Turner-Foster, staff physician at FCI Fort Dix; and Dr. Abigal Lopez de Lasalle, Medical Director at FCI Fort Dix. (Complaint, Caption, ¶¶ 8-13.)  The following factual allegations by Plaintiff are taken from the Complaint, and are accepted for purposes of this screening only.

Plaintiff alleges that he has been incarcerated in the federal prison system since 2003.  Before his incarceration, Plaintiff had two surgeries on his back as a result of two motor vehicle accidents.  Plaintiff was on a course of pain management for his back before his imprisonment.  (Compl., ¶¶ 14-16.)  In January 2008, Plaintiff was transferred to FCI Fort Dix.  During the nine hour transfer process, Plaintiff was handcuffed and

---

[1]  Plaintiff alleges that Grondolsky was the Warden at FCI Fort Dix, where the incidents at issue occurred, but is now the Warden at FMC Devens, where Plaintiff is now confined.  (Compl., ¶ 10.)

[2]  Plaintiff alleges that Spaulding was the Health Services Administrator at FCI Fort Dix at the time the incidents at issue occurred, and is the present Health Services Administrator at FMC Devens, where Plaintiff is now confined.  (Compl., ¶ 11.)

shackled, causing him to suffer "excruciating pain in his legs, numbness, insomnia, and loss of concentration." (Compl., ¶ 18.)

After initially being evaluated at FCI Fort Dix, Plaintiff was denied pain medication for his extreme pain. He continued to seek pain medication but was denied on repeated occasions. Then in October 2008, Plaintiff was given Oxycodone for pain "that significantly relieved the pain in his back ... and Plaintiff was able to resume normal functions." (Compl., ¶¶ 19, 20.) Then, in January 2009, Plaintiff slipped and fell on ice between the medical facility and Building #5803 at FCI Fort Dix, further aggravating Plaintiff's prior back injury and causing "significant additional pain." (Compl., ¶ 21.)

Plaintiff was medically treated for his slip and fall injury and provided a wheelchair and an increased dosage of Oxycodone for his pain. However, in March 2009, Plaintiff was called to meet with Defendants, Dr. Turner and Dr. Lopez de Lasalle, who informed Plaintiff that the pain medication would not be renewed without any examination or new MRI results. Plaintiff's pain medication was terminated "instantly" and Dr. Turner refused to renew the Oxycodone prescription. (Compl., ¶¶ 22-25.)

Thereafter, in March 2009, Plaintiff allegedly "collapsed during the middle of the night due to the extreme pain he was enduring in his back and legs." (Id., ¶ 26.) An unnamed correction officer contacted Defendant Spaulding to obtain authorization for Plaintiff's transfer to the hospital for

evaluation.  Spaulding denied the request and Plaintiff was left lying on the floor until morning because he could not move. Plaintiff alleges that he suffered "significant and excruciating pain" and urinated on himself in the night because he could not move.  (Id., ¶¶ 27-30.)

When Spaulding reported for duty in the morning, Plaintiff was picked up off the floor and was transferred to medical where he waited for "a number of hours despite being in excruciating pain."  (Id., ¶¶ 30-31.)  Plaintiff also complains that he was unable to ambulate without the assistance of a wheelchair and became incontinent as a result of the refusal to provide treatment.  He alleges that the "Defendant refused to provide another MRI until March 25, 2009."  (Id., ¶ 32.)

Plaintiff further alleges that Defendants Grondolsky and Spaulding "engaged in a course of continuous conduct that virtually ignored Plaintiff's complaints."  (Id., ¶ 33.)  Namely, Plaintiff alleges that from March 2009 until May 2010 (when Plaintiff was transferred to FMC Devens), Defendants prescribed pain medications that "they knew" did not alleviate Plaintiff's pain.  These new medications also caused Plaintiff to have headaches, nausea and other side effects. (Id., ¶¶ 34, 35.)

After Defendants Turner and Lopez de Lasalle terminated Plaintiff's Oxycodone, Plaintiff attended many sick calls for medication to stop his severe back pain.  Plaintiff alleges that his request to see a doctor was refused.  During this time,

4

Plaintiff also suffered "heart palpitations, irregular heartbeat, tightness in his chest and extreme pain in his back and legs." (Id., ¶¶ 38-40.)  Plaintiff lost his appetite and bladder control functions.  (Id., ¶ 41.)

In April 2010, Defendants finally scheduled a myelogram, and Plaintiff was then designated a Care Level 3 inmate from a Care Level 2 inmate.[3]  Once designated a Care Level 3 inmate, Plaintiff was transferred to FMC Devens in Massachusetts.  At FMC Devens, Plaintiff was designated a Care Level 4 inmate, who requires 24-hour nursing care or assistance.  (Id., ¶¶ 42-48.)

Plaintiff contends that between the time that he was designated a Care Level 3 inmate to a Care Level 4 inmate, he was treated in a manner that was "palpably unreasonable to the well-being of Plaintiff."  (Id., ¶ 50.)  For instance, Defendants refused to evaluate Plaintiff for his severe back pain, refused to see Plaintiff at sick call, and Defendant Lopez de Lasalle removed Plaintiff's wheelchair, which he needed to get around. (Id., ¶¶ 51, 52.)  Plaintiff alleges that his sick call requests were removed from the FCI Fort Dix computer tracking system. (Id., ¶ 53.)  He refers to an incident when he had an open wound

---

[3]  Care Level 2 inmates are classified as stable outpatient requiring quarterly evaluations, who can be managed through routine, regularly scheduled clinical appointments for monitoring.  (Compl., ¶ 44.)  Care Level 3 inmates, however, "are fragile outpatients who require frequent clinical contacts to prevent hospitalization for catastrophic events.  They require some assistance with daily living, but do not need daily nursing care.  Other inmates are assigned as "companions" to provide the needed assistance."  (Id., ¶ 45.)

on his lower back, but was refused treatment for wound care, as well as another occasion where medical staff slammed the door in his face when he came to the medical area for treatment. (Id., ¶¶ 54, 55.)

After his transfer to FMC Devens, Plaintiff was prescribed Oxycodone for pain, but the prescription eases his pain for only three hours per dose. Plaintiff further complains that he has not been provided with a companion to assist him in daily activities, nor has he been given a hospital mattress to alleviate the pain in his back and legs. He contends that other inmates with similar medical problems at FMC Devens have been provided with a companion and hospital mattress. (Id., ¶¶ 56-59.) Plaintiff also alleges that his treating physician has taken away his pain medication because Plaintiff continued to complain about pain, and was told that if he complains to another physician or medical director, all pain medications will be removed. (Id., ¶¶ 60, 61.)

Plaintiff asserts an Eighth Amendment denial of medical care claim, a medical negligence claim, and a claim of retaliation. (Id., Counts I, II and III.) He seeks unspecified compensatory and punitive damages. (Id., p. 11.)

This Court takes judicial notice of Plaintiff's earlier civil rights action, Malouf v. Turner, et al., Civil No. 09-2117 (JBS), which raised similar prior claims of denial of medical care, retaliation, and medical negligence, as well as a premises

liability claim not raised here.  In an Opinion and Order entered on August 31, 2011, this Court found that Plaintiff had failed to exhaust his administrative remedies, as required under 42 U.S.C. § 1997e(a), before bringing his Eighth Amendment denial of medical care claim.  This Court also determined that Plaintiff failed to present his medical negligence (tort) claim to the BOP, as required under the Federal Tort Claims Act at 28 U.S.C. § 2675(a), before filing his complaint in Civil No. 09-2117 (JBS). Accordingly, this Court dismissed Plaintiff's medical negligence claim for lack of jurisdiction, and granted Defendants' motion for summary judgment regarding the Eighth Amendment denial of medical care claim and retaliation claim for failure to exhaust administrative remedies.  The dismissal was without prejudice. (Civil No. 09-2117 (JBS) at Docket Nos. 66 and 67.)

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§

1915(e)(2)(B) and 1915A.  This action is subject to <u>sua</u> <u>sponte</u> screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>see</u> <u>also</u> <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Fed.R.Civ.P.</u> 8(a)(2).  Citing its opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009)(citing <u>Iqbal</u>, 556 U.S. at 676).  The Supreme Court's

ruling in _Iqbal_ emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  _See_ _id_. at 678-79; _see_ _also_ _Twombly_, 505 U.S. at 555, & n. 3; _Warren Gen. Hosp. v. Amgen Inc._, 643 F.3d 77, 84 (3d Cir. 2011).  "A complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." _Fowler_, 578 F.3d at 211 (citing _Phillips v. County of Allegheny_, 515 F.3d 224, 234-35 (3d Cir. 2008).  _See_ _also_ _Argueta v. U.S. Immigration & Customs Enforcement_, 643 F.3d 60, 73 (3d Cir. 2011); _Bistrian v. Levi_, 2012 WL 4335958, *8 (3d Cir. Sept. 24, 2012)(allegations that are no more than conclusions are not entitled to the assumption of truth; a court should "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'")(quoting _Iqbal_, 556 U.S. at 679).

III.  ANALYSIS

A.  Denial of Medical Care Claim

The Eighth Amendment prohibits punishments of convicted prisoners that are "cruel and unusual."  _Jackson v. Danberg_, 594 F.3d 210, 216 (3d Cir. 2010).  An Eighth Amendment claim includes an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. _Wilson v. Seiter_, 501 U.S. 294, 298 (1991).  The objective component is "contextual and responsive to 'contemporary

standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992)(quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  The subjective component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297).  "What is necessary to establish an 'unnecessary and wanton infliction of pain,' ... varies according to the nature of the alleged constitutional violation." Hudson, 503 U.S. at 5 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)).

Where the claim is one alleging the failure to provide medical care, as alleged by Plaintiff here, the core inquiry is whether the defendants' actions constituted "deliberate indifference" to an inmate's serious medical needs.  Estelle, 429 U.S. at 104.  Deliberate indifference is shown if a defendant "intentionally den[ies] or delay[s] access to medical care or intentionally interfere[es] with the treatment once prescribed." Id. at 104-05.  Furthermore, deliberate indifference can be manifested by "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).  Moreover, "[s]hort of absolute denial, if necessary medical treatment is ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)(alterations in original)(internal

quotation marks and citation omitted).  A medical need is serious
if it "has been diagnosed by a physician as requiring treatment
or ... so obvious that a lay person would easily recognize the
necessity for a doctor's attention." Atkinson v. Taylor, 316
F.3d 257, 272–73 (3d Cir. 2003)(internal quotation marks and
citation omitted). However, "[a]llegations of medical malpractice
or mere disagreement as to the proper medical treatment are
insufficient to establish a constitutional violation." Szemple
v. Univ. of Med. & Dentistry, No. 11–1376, 2011 U.S.App. LEXIS
22914, at *8, 2011 WL 5562668 (3d Cir. Nov. 16, 2011)(citing
Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004)).

     This Court first finds that the Complaint fails to state a
claim of deliberate indifference necessary to support an Eighth
Amendment violation against the medical Defendants, Dr. Turner
and Dr. Lopez de Lasalle.  Plaintiff's allegations against these
doctors relate to their discontinuation of Oxycodone to treat
Plaintiff's chronic complaints of back pain from March 2009
through May 2010, when he was transferred to FMC Devens.  This
Court takes judicial notice of the administrative records and
declarations by these doctors submitted in Plaintiff's previous
action, Civil No. 09-2117 (JBS), which raised these very same
claims.

     In those records, Dr. Lopez de Lasalle states that she was
not Plaintiff's treating physician, and saw him on one occasion
at issue.  On that occasion, Defendant medically determined that

Plaintiff's prolonged use of narcotic Oxycodone for long term
pain management was not in his best interests.  (Declaration of
Abigail Lopez de Lasalle, M.D., Docket entry no. 53-4 in Civil
No. 09-2117 (JBS))(hereinafter "Lopez de Lasalle Decl.")
Specifically, Dr. Lopez de Lasalle noted that Oxycodone is a
narcotic that is not typically used for chronic neuroleptic pain
management, and that, as a result, on March 10, 2009, she
"decided to taper [Plaintiff] off of the Oxycodone, and prescribe
him appropriate pain medication from the BOP National Formulary.
On that date, [she] reduced the Oxycodone from 80mg to 40mg.
Additionally, [she] prescribed MethylPrednisone, 10mg, and
Carbamaxepine, 200mg, for pain relief."  (Id., ¶ 4.)  Dr. Lopez
de Lasalle did not treat Plaintiff at FCI Fort Dix after that one
incident.  (Id.)

Defendant, Dr. Turner, also provided a Declaration
pertaining to her treatment of Plaintiff at FCI Fort Dix.  In her
Declaration, Dr. Turner states that she was Plaintiff's primary
care physician at FCI Fort Dix from March 2009 through December
2009.  During that time, Dr. Turner treated Plaintiff's
complaints of chronic back pain with "a series of pain
medications from the Bureau of Prisons' National Formulary."
(Declaration of Nicoletta A. Turner-Foster, M.D., ¶¶ 4, 5, Docket
entry no. 53-3 in Civil No. 09-2117 (JBS))(hereinafter "Turner
Decl.")  Dr. Turner states that she prescribed or authorized
about eight formulary pain medications for Plaintiff and approved

non-formulary additional pain medication when Plaintiff complained that the formulary prescriptions were ineffective.  In addition, Dr. Turner attested that Plaintiff's prescription for Oxycodone was tapered down and discontinued because such narcotics are typically used for terminal or acute pain, for short term relief, and not for chronic pain as experienced by Plaintiff.  In March 2009, Plaintiff had been on Oxycodone for five months.  Consequently, a medical decision was made to wean Plaintiff from Oxycodone and place him on appropriate pain medications.  (Id., ¶¶ 6, 7.)

Dr. Turner further states that during the nine months she was his primary care physician, she met with or examined him on at least 8 occasions, and he was seen by other medical personal approximately 17 times during that same nine month period.  Dr. Turner also recommended a CT scan of Plaintiff's LS spine, an MRI of his thoracic spine, and a consultation with a neurosurgeon, all of which were approved.  (Id., ¶ 8.)

Based on these records, it is plain that Plaintiff was extensively treated for his complaints of chronic back pain.  Rather, at best, Plaintiff's denial of medical care claim appears to be based on his disagreement with the treatment course set forth by Drs. Turner and Lopez de Lasalle, who both determined that continued and prolonged use of Oxycodone to manage his chronic back pain was contraindicated, and therefore, prescribed Plaintiff other pain medications more appropriate for management

13

of chronic pain.  As discussed above, such claims of disagreement in treatment, or negligence, or medical malpractice, do not rise to the level of an Eighth Amendment violation.  As the Third Circuit has noted "mere disagreements over medical judgment do not state Eighth Amendment claims" because there may be "several acceptable ways to treat an illness."  White, 897 F.2d at 110; see also Hodge v. United States Dep't of Justice, 372 Fed. Appx. 264, 268 (3d Cir. 2010)("disagreements ... among physicians, concerning the course of medical treatment ... do not support a claim for a violation of the Eighth Amendment."); Ham v. Greer, 269 Fed. Appx. 149, 151 (3d Cir. 2008)("Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred.  This simply does not rise to the level of a violation of a constitutionally protected right.").

Therefore, while this Court sympathizes with Plaintiff's severe chronic back pain, it is clear that Defendants, Dr. Turner and Dr. Lopez de Lasalle, were not deliberately indifferent to his medical needs to support an Eighth Amendment violation, and Count I of the Complaint will be dismissed with prejudice as against these two Defendants.

Next, Plaintiff alleges that the non-medical Defendants, Spaulding and Grondolsky, "engaged in a course of continuous conduct that virtually ignored Plaintiff's complaints."  (Compl., ¶ 33.)  Plaintiff's allegations again appear to be based on the

14

medical decision by Dr. Turner and Dr. Lopez de Lasalle to wean Plaintiff from Oxycodone, and to prescribe pain medications that "they knew" did not alleviate Plaintiff's pain.  (Compl., ¶ 34.) Plaintiff also alleges that, on one occasion, when Plaintiff collapsed from back pain at night, Defendant Spaulding would not authorize that Plaintiff be taken to medical for evaluation until the next morning.  (Compl., ¶¶ 27-31.)  Finally, Plaintiff seems to allege that he was not scheduled for an MRI until March 25, 2009, shortly after his "collapse" from pain on an unspecified date in March 2009, and generally, that Defendants refused to evaluate him for his severe back pain or see Plaintiff at sick call.  (Compl., ¶¶ 51-55.)

    None of these allegations on the part of non-medical defendants rise to the level of an Eighth Amendment violation denying medical care to Plaintiff because they do not show deliberate indifference by the non-medical Defendants.  First, the single incident involving Plaintiff's overnight collapse and transfer to the medical department in the morning for evaluation does not suggest deliberate indifference by Defendant Spaulding. When Spaulding reported to work in the morning, Plaintiff admits that Spaulding ensured that Plaintiff was taken to medical for evaluation.  This delay of overnight hours when Spaulding was not on duty, as admitted by Plaintiff in his Complaint, does not show a "persistent" or "intentional" delay or denial of medical care

by Spaulding that would constitute deliberate indifference on his part.  See Estelle, 429 U.S. at 104-05; White, 897 F.2d at 109.

Moreover, prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  See also Carter v. Smith, 483 Fed. Appx. 705, 708 (3d Cir. May 23, 2012).

Here, as discussed above, it is plain that Plaintiff was receiving continual and constant medical attention from the prison medical staff.  Consequently, Defendants Spaulding and Grondolsky cannot be held to be deliberately indifferent when it was apparent that Plaintiff was receiving medical care for his complaints of pain.  Again, Plaintiff's allegations merely show Plaintiff's personal disagreement with the doctors' medical decision to manage Plaintiff's pain with medications other than that preferred by Plaintiff, which is nothing more than an assertion of medical malpractice at best and insufficient to show deliberate indifference.

Further, Defendant Grondolsky's responses to Plaintiff's administrative remedy forms do not support deliberate indifference necessary to state an Eighth Amendment denial of medical care claim.  For instance, in Grondolsky's May 4, 2009 administrative response to Plaintiff, he states:

> A review of your medical records reveals you were evaluated by a staff physician on March 27, 2009, for chronic back pain.  The treatment plan was to prescribe formulary pain medication and increase the dosage as needed for pain. Specifically, you were prescribed Levetiracetem.  An MRI was also ordered to rule out any pathology.  On April 2, 2009, an MRI was obtained that showed some narrowing of the lumbar sacral spine; however, no nerve impingement was detected.  A recommendation was made for a  CAT-scan to evaluate the bones.  On April 7, 2009, the results were discussed with you as well as the future treatment plan.  That plan included ordering a CAT scan of the lumbar sacral spine and increasing the dosage of Levetiracetam until pain is controlled.  On April 14, 2009, your pain medication was changed to Topiramate in response to your verbalization that Levetiracetam was ineffective.  Once the cat scan results have been obtained and reviewed by the Physician, your treatment options will be discussed with you to include a possible referral to an outside specialist.

(Moran Decl., Ex. 3, Civil No. 09-2117 (JBS) at Docket entry no. 53-2.)

On October 22, 2010, Defendant Grondolsky again responded to Plaintiff's administrative remedy request made at FMC Devens, stating as follows:

> This is in response to your Request for Administrative Remedy received September 24, 2010, wherein you allege you are being tortured and mentally abused by your primary care physician.  Specifically, you claim that on August 12, 2010 he "jerked (you) abruptly backwards out of his office" and "pushed (you) to the therapy room," demanding your wheelchair back.  You further allege he has failed to manage your chronic pain adequately, threatened to reduce your pain medication and disregarded the recommendations of an outside

neurosurgeon pertaining to your course of treatment.  For
relief, you request to be evaluated by a Pain Management
Clinician, as recommended by the neurosurgeon.  In addition,
you request a change in your primary care provider, a pass
for a double or medical mattress with double pillows and
that a companion be assigned to you.

A review of your complaint revealed the following.  On July
27, 2010, you were evaluated by a neurosurgeon at the
University of Massachusetts Medical Center (UMMC).  During
this visit, the neurosurgeon noted your MRIs and CT mylogram
were not available for review.  As a result, you signed a
release form in order for UMMC to obtain those images from
St. Francis Medical Center in Trenton, New Jersey.  Health
Services staff made routine inquiries to UMMC to determine
if they had received the requested films and each time staff
from that facility indicated they did not.  Therefore,
medical staff from this institution intervened and were able
to obtain the requested films, which were forwarded to UMMC
on October 6, 2010.  Regarding a consult for pain
management, we are currently awaiting direction from the
neurosurgeon.  Once she has reviewed your diagnostic films,
a determination will be made regarding a possible referral
for pain management.

Based on clinical evaluations, physical examinations and the
neurosurgery report, your daily living skills are not
limited.  Therefore, you do not meet the criteria for
assistance from an inmate companion.  Companions are
assigned to help inmates who are in severe need of
assistance with tasks associated with daily living.
Additionally, medical mattresses are not used at this
facility.  Hospital mattresses are used for the hospital
beds in certain medical units and you do not meet the
criteria for a hospital bed.  Your issued mattress meets
your medical needs.  Furthermore, you do not meet the
medical criteria for an extra pillow (e.g., congestive heart
failure).

No evidence has been presented or discovered to substantiate
your allegations of torture and mental abuse on the part of
your primary care physician.  In addition, you provided a
signed affidavit to the Special Investigative Agent on
October 19, 2010, attesting that at no time were you
threatened by your primary care physician during your
appointment with him on August 12, 2010, nor were you ever
in fear for your personal safety and well being.  Inmates
are assigned primary care teams based on their registration
numbers.  Accordingly, your primary care physician will

18

remain the same.  Records further indicate you are currently housed in the Special Housing Unit (SHU) for disciplinary sanctions, as you were issued an incident report and found to have committed the prohibited act of Use of any Narcotics, Marijuana, Drugs, or Related Paraphernalia not Prescribed for the Individual by Medical Staff (Code 112). You will be seen by your primary care physician to review your pain medications once you are released from SHU.

(Moran Decl., Ex. 4, Civil No. 09-2117 (JBS) at Docket entry no. 53-2.)

Thus, the administrative record pertaining to Plaintiff's complaints of lack of medical care plainly demonstrate that Defendants Grondolsky and Spaulding were not deliberately indifferent to Plaintiff's complaints of pain.  It is apparent from the administrative record that Plaintiff was being treated for his complaints, but that the medical treatment decisions were not to Plaintiff's satisfaction.  Accordingly, the Eighth Amendment denial of medical care claim will be dismissed without prejudice for failure to show deliberate indifference on the part of the named defendants.[4]

---

[4]  To the extent that Plaintiff can allege facts sufficient to support a claim of deliberate indifference, he may seek leave to file an amended complaint.  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

B.   <u>Medical Malpractice Claim</u>

In Count II of his Complaint, Plaintiff asserts a claim of medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(B), 2671 <u>et</u> <u>seq</u>. (2006).  The FTCA is recognized as a limited waiver of the sovereign's immunity from suit.  <u>See</u> <u>White-Squire v. U.S. Postal Serv.</u>, 592 F.3d 453, 456 (3d Cir. 2010); <u>Fields v. United States</u>, 2010 WL 715720, *2 (D.N.J. Feb.24, 2010)(citing <u>Roma v. United States</u>, 344 F.3d 352, 362 (3d Cir.2003)).  The only proper defendant in an action brought under it is the United States itself, and not a federal agency or federal official.  28 U.S.C. §§ 1346(b)(1), 2674, 2679(a); <u>see</u> <u>also</u> <u>CNA v. United States</u>, 535 F.3d 132, 138 n. 2 (3d Cir. 2008); <u>Doughty v. United States Postal Service</u>, 359 F. Supp.2d 361, 363 n. 1 (D.N.J.2005).  In addition, pursuant to the express requirements of 28 U.S.C. § 2675(a),

> An action shall not be instituted upon a claim against the United States for money damages for ... for personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and the claim shall have been finally denied in writing .... The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

<u>Id</u>. (emphasis supplied); <u>see</u> <u>also</u> <u>White-Squire</u>, 592 F.3d at 457. Under this provision, an FTCA claimant must file an administrative claim with the responsible federal agency before instituting suit.  The provisions of § 2675(a) are deemed jurisdictional and not subject to waiver.  <u>Lightfoot v. U.S.</u>, 564

F.3d 625, 626–27 (3d Cir. 2009); <u>Deutsch v. United States</u>, 67
F.3d 1080, 1091 (3d Cir. 1995).

In addition, the FTCA requires the commission of a tort to
impose liability. More specifically, federal constitutional
violations are not cognizable under the FTCA; state law provides
the source of substantive liability under the FTCA. <u>See</u> <u>F.D.I.C.</u>
<u>v. Meyer</u>, 510 U.S. 471, 477–78 (1994); <u>Webb v. Desan</u>, 250 Fed.
Appx. 468, 2007 WL 2962604 (3d Cir., Oct. 11, 2007).

Furthermore, a plaintiff's claim under the FTCA must comply
with the applicable statute of limitations. Under federal law,
tort actions against the United States must be:

> [P]resented in writing to the appropriate Federal agency
> within two years after such claim accrues or unless action
> is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of
> the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). "The requirements that a claimant timely
present a claim, do so in writing, and request a sum certain are
jurisdictional prerequisites to suit under the FTCA." <u>Deutsch</u>,
67 F.3d at 1091.

> As a sovereign, the United States is immune from suit save
> as it consents to be sued. The terms of its consent to be
> sued in any court define the court's jurisdiction to
> entertain the suit. <u>United States v. Sherwood</u>, 312 U.S.
> 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Although the
> Federal Tort Claims Act allows suits against the Government
> for torts committed by its employees while in the scope of
> their employment, it specifically requires an initial
> presentation of the claim to the appropriate federal agency
> and a final denial by that agency as a prerequisite to suit
> under the Act. This requirement is jurisdictional and
> cannot be waived.

Bialowas v. United States, 443 F.2d 1047, 1048-49 (3d Cir. 1971);
accord, Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003),
cert. denied, 543 U.S. 874 (2004).

As noted above, this Court has taken judicial notice of
Plaintiff's earlier action, Civil No. 09-2117 (JBS).  In that
action, Plaintiff's same claim of medical negligence cognizable
under the FTCA was dismissed without prejudice for lack of
subject matter jurisdiction because Plaintiff had filed his
complaint in Civil No. 09-2117 (JBS) before exhausting his
administrative tort claim.  It was shown in the earlier case,
however, that after Plaintiff had filed his original complaint,
on or about July 2010, Plaintiff did file an administrative tort
claim with the BOP, which was received by the BOP on July 26,
2010.  Plaintiff's tort claim alleged that, after he slipped and
fell on ice at FCI Fort Dix in January 2009, he was
"unconstitutionally treated" and had "not been treated correctly
or fairly."  (August 31, 2011 Opinion, Civil No. 09-2117 (JBS) at
Docket Item 66, p. 7.)  Plaintiff sought damages for his injuries
in the amount of $5 million.  The BOP denied Plaintiff's tort
claim on September 8, 2010, on the grounds that it raised a
constitutional claim.  (Id.)

Thus, because it appears that Plaintiff may have satisfied
the jurisdictional requirements to bring his medical negligence
claim under the FTCA, having filed and exhausted his
administrative tort claim before bringing this action, and the

allegations having identified the tort of medical malpractice sufficient to give rise to liability under the FTCA, the Court will allow Plaintiff's Count II, asserting medical malpractice under the FTCA, to proceed at this time, but only as to the proper named defendant, the United States.  See CNA v. United States, 535 F.3d at 138 n. 2 (the United States "is the only proper defendant in a case brought under the FTCA").  All other named defendants will be dismissed with prejudice as to this claim.

Further, as to any claims of medical malpractice allegedly occurring after July 2010, regarding medical treatment at FMC Devens, Plaintiff's previously-filed notice of tort claim concerning medical negligence at FCI Fort Dix does not operate as the jurisdictional exhaustion requirement for post-July 2010 alleged torts, and such claims accordingly will be dismissed without prejudice at this time.

C.   Retaliation

Finally, in Count III of his Complaint, Plaintiff asserts a First Amendment retaliation claim, generally alleging that Defendants took away his pain medications or did not treat him for pain in retaliation against him for filing grievances. (Compl., ¶¶ 33, 60, 61.)

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional."  Bistrian v. Levi, 696 F.3d 352, 2012 WL 4335958 at *19 (3d Cir. Sept. 24, 2012).

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" Hartman v. Moore, 547 U.S. 250, 256 (2006) (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n. 10 (1998)).  A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) a causal link between the protected conduct and the adverse action taken.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

Whether the allegedly adverse action was "'sufficient to deter a person of ordinary firmness from exercising his constitutional rights' is an objective inquiry and ultimately a question of fact." Bistrian, 2012 WL 4335958 at *19 (quoting Rauser, 241 F.3d at 333).  To establish a causal link, the prisoner must show that the "constitutionally protected conduct was a 'substantial or motivating factor'" in the decision to take adverse action.[5] Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir.

---

[5]   However, "once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interest." Rauser, 241 F.3d at 334; see also Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding his protected activity).

2001)(quoting Mount Healthy City School Dist. B. of Ed. v. Doyle,
429 U.S. 274, 287 (1977)).

Plaintiff's allegations ostensibly satisfy the first
element, as he alleges that he engaged in conduct protected by
the First Amendment, i.e., he submitted administrative remedy
requests in an attempt to obtain medications and treatment for
his complaints of pain.  However, Plaintiff's allegations do not
satisfy the third factor, showing a causal link between the
protected activity and adverse action.  Namely, in this case, the
decision to discontinue Oxycodone was based on a medical
determination that such medication was inappropriate for long
term use in chronic pain management.  In short, there was no
adverse action taken against Plaintiff because he filed
grievances, as alleged by Plaintiff.  Further, the medical
decision to discontinue Oxycodone did not serve to deter
Plaintiff from filing administrative remedies or vigorously
litigating this lawsuit.  Thus, Plaintiff's retaliation claim in
Count III of this Complaint does not allege facts sufficient to
show that Defendants had a retaliatory motive and Plaintiff's
allegations do not demonstrate that Defendants' actions were
purposeful retaliation against him for having filed
administrative grievances.  Accordingly, Plaintiff's retaliation
claim will be dismissed without prejudice as against all named
defendants for failure to state a claim at this time.

IV.  CONCLUSION

25

For the reasons set forth above, Plaintiff's Eighth Amendment claim alleging denial of medical care, Count I of the Complaint, will be dismissed without prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim at this time.  Likewise, Plaintiff's First Amendment retaliation claim, Count III of the Complaint, will be dismissed without prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim at this time.  Finally, Plaintiff's FTCA claim of medical malpractice will be allowed to proceed at this time as against the United States only, and limited to those allegations pertaining to claims of medical negligence purportedly occurring while Plaintiff was confined at FCI Fort Dix.  An appropriate order follows.

                                           **s/ Jerome B. Simandle**
                                           JEROME B. SIMANDLE, Chief Judge
                                           United States District Court

Dated:  **January 17, 2013**